## State Capital Savings & Loan Corporation v. Unangst et ux.

*Robert S. Bachman*, for petitioners.

*John H. Diefenderfer* and *William C. Fulmer*, contra.

STEWART, P. J., July 8, 1935.—On April 16, 1935, a petition was presented by the defendants herein alleging that they resided on certain premises in Bethlehem; that the premises were subject to a building and loan mortgage, dated July 5, 1928, originally for $8,500; that the principal of the mortgage had been reduced to $6,261.92, with interest from March 30, 1935; "that during these same years your petitioners have paid off thousands of dollars of indebtedness against this property, have furnished the same to be rented as furnished apartments, and have cared for said apartments;" that on January 20, 1931, petition-

ers deeded the property to Frank J. Mitman and Harvey W. Freeman under a written agreement by which the grantees, under certain circumstances, obligated themselves to return the property to the grantors. They did not do it, and an action of ejectment was brought by Mitman and Freeman to no. 4 December term, 1934, against the present petitioners to obtain possession of the property. We stayed the fi. fa. until 60 days after the entry of final judgment in, or the discontinuance of, the ejectment action. The State Capital Savings & Loan Corporation, after the stay was granted, filed an answer, and asked this court to vacate the order to stay the execution.

In the answer it denies that the petitioners have paid off "thousands of dollars against the mortgage obligation of this property." It alleges that instead of paying $1,275, as they should according to the terms of the mortgage, up to January 20, 1931, they only paid the sum of $851.87; that from January 20, 1931, to March 30, 1935, the sum of $1,386.21 was paid by Freeman and Mitman; and that they are now in arrears in the sum of $569.18. The last payment Freeman and Mitman made January 1, 1934. The averments of the answer must be taken to be true, no depositions having been taken to contradict them.

The Act of March 27, 1935, P. L. 7, extends the prior Act of May 18, 1933, P. L. 826. It reads:

"Whereas, The present economic emergency has brought increasing distress to home owners and farmers; and

"Whereas, Foreclosures in this emergency, work tremendous inequities to such persons, yield a minimum of satisfaction to execution creditors, and deprive families of shelter and means of subsistence, thus endangering the health, safety, welfare and morals of the public. . . .

" 'Real property' shall mean any dwelling, together with the land appurtenant thereto, and any farm occupied by an owner of such dwelling or farm as a residence.

"Section 2. Every court of common pleas of this Commonwealth shall have authority, under the conditions

hereinafter set forth, to stay any writ of execution from time to time and for such periods as the court, in its discretion, may deem proper. Such stays shall be allowed only upon application of an owner, lienholder, or any other person in interest, and, unless the plaintiff consent thereto, only upon the applicant's showing to the court such facts as the court may deem sufficient to warrant such relief. In granting any such stay or continuance, the court may impose such condition as it deems proper as to payment of costs, taxes, accruing interest, repairs, advertising and notice of sale, insurance, and any other pertinent matters.

"Section 3. In exercising the powers conferred by this act, a court shall have the discretion of a chancellor sitting in equity. It shall be a sufficient reason for the grant of a stay hereunder that immediate execution sale against the real property would work serious inequity by reason of the economic emergency hereinabove referred to."

It seems to us to be plain that the purpose of this act was in relief of "home owners", "dwelling houses". It is true that the petition alleges that the petitioners live in this property, but in the fourth paragraph set out above, it appears that these premises are furnished apartments and rented out as such, with petitioners acting as janitors. We do not believe it was the intention of the legislature to grant a stay for this sort of building. It also appears that petitioners from the start, in 1928, did not keep up their regular monthly payments. They were in default, and they transferred the legal title to Mitman and Freeman. Then difficulties arose between them and Mitman and Freeman, and an action of ejectment is pending. It is stated in the brief of the learned counsel for the petitioners that that action is on the civil trial list, and that it will probably be tried on the next civil trial list. If it is tried, there will, no doubt, be a motion for a new trial, and perhaps an appeal. This view is predicated on the assumption that the Unangsts will win the ejectment case, but should Mitman and Freeman, with the legal title,

win the ejectment case, the Unangsts will be out. It is true the act says the application may be made by "any other person in interest", but the interest ought to be more definite than it is in this case, and the act means persons whose interest is certain and fixed, and it ought not to be construed to apply to anyone whose interest is as contingent and uncertain as the petitioners' in this case. The State Capital Savings & Loan Corporation had nothing to do with the petitioners' deal with Mitman and Freeman, and after carefully considering the facts of this case, and the act of assembly, we think the State Capital Savings & Loan Corporation should be permitted to collect its mortgage without further delay.

And now, July 8, 1935, on reconsideration of the petition and answer, it is ordered and decreed that the order made on April 16, 1935, be vacated and set aside.